# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

SHAWN SAMUEL VALDEZ,

      Petitioner,

v.                                                Civil Action No. 3:09cv753

KIMBERLY RUNION,

      Respondent.

## MEMORANDUM OPINION

Shawn Samuel Valdez, a Virginia prisoner proceeding *pro se*, filed this 28 U.S.C. § 2254 petition ("§ 2254 Petition"). Valdez challenges his convictions in the Circuit Court for King George County for two counts of taking indecent liberties with a child. Valdez contends that he is entitled to relief upon the following grounds:

Claim 1     Valdez received ineffective assistance of trial counsel:

     (a)    Counsel failed to investigate and raise "settled insanity" as a defense. (§ 2254 6.)

     (b)    Counsel failed to adequately challenge the prosecution's plans to use at trial pornographic images seized from Valdez's computer.

          (i)    Counsel should have moved to suppress the images on the grounds that their seizure violated the Fourth Amendment.[1]

          (ii)   Counsel should have cited favorable authority from the Court of Appeals of Virginia in her motion in limine.

Claim 2     Valdez's rights under the Sixth Amendment[2] were violated because the Circuit Court denied Valdez's request for new counsel.

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.

[2] "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

| Claim 3 | Valdez's guilty plea was involuntary because Valdez's rights under the Sixth Amendment were violated. |
| --- | --- |
| Claim 4 | Valdez's rights under the Double Jeopardy Clause were violated.[3] |
| Claim 5 | Valdez received the ineffective assistance of appellate counsel because appellate counsel did not raise the double jeopardy issue on appeal. |

Respondent filed a Motion to Dismiss and Rule 5 Answer (Docket Nos. 4, 6) and provided Valdez with appropriate *Roseboro* notice (Docket No. 8).[4] Valdez has responded. (Docket Nos. 11, 18.) The matter is ripe for disposition.

Respondent concedes that Valdez has exhausted his state court remedies. (Respt.'s Mem. Supp. Mot. Dismiss ¶ 5.) Although Respondent mentions several state procedural rules in her memorandum (*see, e.g.*, Respt.'s Mem. Supp. Mot. Dismiss ¶¶ 28, 32), Respondent does not argue such rules are adequate and independent state procedural rules that bar federal review of Valdez's claims. *See Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases for the proposition that the burden of pleading and proving that a claim is procedurally defaulted rests with the state). Given these circumstances and Respondent's assertion that Valdez's claim lack merit (Respt.'s Mem. Supp. Mot. Dismiss 10), the Court will proceed to address the merits of Valdez's claims.

---

[3] "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V.

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

# I. Procedural History

## A. Pretrial Proceedings

On April 14, 2005, a grand jury in King George County indicted Valdez on charges of taking indecent liberties with a child under the age of fourteen on December 9, 2004 and aggravated sexual battery of a child between thirteen and fifteen years on December 9, 2004. (Circuit Court R. at 8, 9.)[5]

On May 3, 2005, counsel for Valdez obtained a consent order for a sanity evaluation. (Circuit Court R. at 11, 12.)

On August 26, 2005, Valdez waived his right to a speedy trial under the Virginia Code, the Virginia Constitution, and the United States Constitution. (Circuit Court R. at 18.)

On October 20, 2005, Valdez, by counsel, Tara-Beth Coleman, moved for a second mental health examination. Valdez asserted that the examiner who conducted the prior examination was biased. (Circuit Court R. at 21.) Contemporaneous with the above motion, Ms. Coleman sought to be removed as counsel of record. (Circuit Court R. at 24.) On October 28, 2005, the Circuit Court conducted a hearing and denied both motions. (Oct. 28, 2005 Tr. 27, 35.)

On November 1, 2005, Coleman filed a motion, *pro se*, to have Ms. Coleman removed as counsel. (Circuit Court R. at 34.) On November 10, 2005, the Circuit Court denied the motion.

---

[5] Valdez's criminal record from the Circuit Court is referred to as "Circuit Court R." The Circuit Court's record of Valdez's habeas proceeding is referred to as "Circuit Court Habeas R."

## B.    Valdez's Plea Proceedings

On November 17, 2005, the Commonwealth agreed to amend the indictments to charge two separate counts of taking indecent liberties with a child: one count for fondling and one count for exposure. (Nov. 17, 2005 Tr. 5, 16; Circuit Court R. at 8-9.) Valdez agreed to enter a nolo contendere plea to the amended indictments. (Nov. 17, 2005 Tr. 5, 16.) Thereafter, the Circuit Court conducted a plea colloquy with Valdez. Valdez acknowledged that he was pleading guilty because he was aware of the evidence arrayed against and agreed it was sufficient to find him guilty. (Nov. 17, 2005 Tr. 12.) The prosecution provided the following summary of that evidence.

Valdez was moving out of his home in December of 2004. Valdez called the thirteen-year old child (hereinafter "the boy") and asked for his assistance in moving. (Nov. 17, 2005 Tr. at 26.) Valdez agreed to pay the boy. (Nov. 17, 2005 Tr. at 26.) Valdez brought the boy to his home on the December 8, 2004, but they just sat around and did not move anything. (Nov. 17, 2005 Tr. 26-27.)

The next day, Valdez picked the boy up and brought him back to his home. (Nov. 17, 2005 Tr. 27.) Valdez provided the boy with marijuana and beer. (Nov. 17, 2005 Tr. 27.) Valdez and the boy then began watching pornographic movies. (Nov. 17, 2005 Tr. 28.) Valdez then took a thumb drive off of his neck and placed it into a computer and showed the boy pictures of Valdez masturbating. (Nov. 17, 2005 Tr. 29; Circuit Court R. 52.) The child did not want to see pictures, so he went outside to use a BB-gun. (Nov. 17, 2005 Tr. 31.)

When the child subsequently went back inside, Valdez was watching a pornographic movie. (Nov. 17, 2005 Tr. 31.) Valdez asked the child to sit next to him, which the boy did.

4

(Nov. 17, 2005 Tr. 31-32.) Eventually, Valdez grabbed the boy's hand and forced it on Valdez's naked, erect penis. (Nov. 17, 2005 Tr. 31.) The boy pulled his hand away and went outside. (Nov. 17, 2005 Tr. 31.) Subsequently, when the boy's mother came to pick him up, Valdez put his hand on the boy's neck, showed him a handgun, and said, "[W]ho are they going to believe, me or you." (Nov. 17, 2005 Tr. 32.)

The boy did not say anything to his parents immediately following this incident. (Nov. 17, 2005 Tr. 32.) Shortly thereafter, however, when the boy was helping Valdez store some possessions in the boy's home, Valdez showed the boy pictures of Valdez with a young girl and Valdez said "I'm going to jail for this." (Nov. 17, 2005 Tr. at 33.) Because the boy realized that Valdez was abusing other children, he told his mother and counselor at school of Valdez's behavior on December 8 and 9, 2004. (Nov. 17, 2005 Tr. 33.)

The boy's testimony would have been corroborated by pictures the police had obtained from a search of Valdez's computer. The Commonwealth had recovered a photo of the boy looking at Valdez's computer screen and a picture Valdez took of the boy with the boy's pants down. (Nov. 17, 2005 Tr. at 29-30; Circuit Court R. 52.) The police also recovered from Valdez's computer the pictures of Valdez masturbating that had been shown to the boy. (Nov. 17, 2005 Tr. 29; Circuit Court R. at 52.)[6]

## C. Sentencing

At sentencing, the Circuit Court heard evidence regarding the extensive amount of child pornography that Valdez had been accessing from his computer. (Feb. 24, 2006 Tr. ("Sent'g Tr.") 12-13; Circuit Court R. at 61-67.) Additionally, the prosecution introduced evidence

---

[6] The police also recovered roughly 250 images of child pornography from Valdez's computer. (Nov. 10, 2005 Tr. 29.)

regarding Valdez's sexually explicit correspondence with a young girl. (Sent'g Tr. 17-21.) That correspondence indicated that Valdez had been involved with this girl since she was nine years old. (Sent'g Tr. 18.) The Circuit Court sentenced Valdez to twenty years of imprisonment and then suspended eight years of that sentence, for a total active term of imprisonment of twelve years of imprisonment. (Circuit Court R. at 68.)

## II. Analysis

### A. Valdez Fails to Demonstrate that He Was Denied the Effective Assistance of Counsel with Respect to His Insanity Defense

In Claim 1(a), Valdez complains that counsel was deficient for not adequately pursuing his defense of "settled insanity," based on his long time use of marijuana.[7] (§ 2254 Pet. 7.) Such a claim is appropriately analyzed under well-established rules for demonstrating the ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Id.* at 687. To satisfy the deficient performance facet of *Strickland,* the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[7] The Court of Appeals of Virginia recently explained that "the settled insanity doctrine has been consistently characterized as a state of mind resulting from long-continued, habitual, prolonged, or chronic alcohol or drug abuse leading to a more or less permanent or fixed state of insanity." *Morgan v. Commonwealth*, 646 S.E.2d 899, 903 (Va. Ct. App. 2007) (internal quotations omitted)

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In rejecting Claim 1(a), the Circuit Court made the following findings:

[Valdez] contends that counsel's failure to have a second mental evaluation denied him of an evaluation which would have shown "settled insanity." The petitioner asserts that such an evaluation would have yielded a basis for an insanity defense.

As to the issue of insanity at the time of the offense, the respondent notes that the Supreme Court of Virginia discussed the insanity defense in <u>Commonwealth v. Chatman</u>, 260 Va. 562, 538 S.E.2d 304 (2000), and held as follows:

In Virginia we have recognized the defense of insanity as set forth in <u>M'Naghten's Case</u>, 10 Cl. And F. 200, 8 Eng. Rep. 718 (H.L. 1843), since 1871. <u>Price v. Commonwealth</u>, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984); <u>Dejarnette v. Commonwealth</u>, 75 Va. 867, 876-78 (1881); <u>Boswell v. Commonwealth</u>, 61 Va. (20 Gratt.) 860 874-76 (1871). Under the <u>M'Naghten</u> definition, an accused must establish that he or she did not know the difference between right and wrong, or that he or she did not understand the nature and consequences of the acts is question. <u>Price</u>, 228 Va. at 457-58, 323 S.E.2d at 108-09.

<u>Id.</u> at 567, 538 S.E.2d at 306. Both facets of the *M'Naghten* test "require a showing of a disease of the mind." <u>Herbin v. Commonwealth</u>, 28 Va. App. 173, 181, 503 S.E.2d 226, 231 (1998). <u>See also Breard v. Commonwealth</u>, 248 Va. 68, 84, 445 S.E.2d 670, 679 (1994). Furthermore, with regard to guilt or innocence, a mental state other than the legal definition of insanity is immaterial. <u>See Stamper v. Commonwealth</u>, 228 Va. 707, 716-17, 324 S.E.2d 682, 688 (1985).

The petitioner has not proffered that he had a mental disease which resulted in insanity under the strict standard of *M'Naghten*. Rather, he has referred to "settled insanity." He has not proffered evidence of legal insanity. In her affidavit, counsel notes that she did not find . . . anything which interfered with the petitioner's understanding of the wrongfulness of his actions. At the sentencing hearing, the petitioner presented his version of the events and obviously understood the wrongfulness of his actions as he attempted to minimize his culpability. (Tr. 60-62.)

7

Moreover, petitioner's trial counsel thoroughly investigated the issue of petitioner's sanity at the time of the offense. Her own investigation revealed that the petitioner knew right from wrong at the time of the offense and was fully capable and competent to stand trial. Moreover, she conferred with the psychologist who examined the petitioner and had an independent psychologist review the report and found no basis to believe that there was any reason for a new examination. (See Exhibit 1, Copy of Affidavit). Petitioner has shown neither deficient performance or progress [prejudice] with respect to the counsel's handling of his psychological evidence.

*Valdez v. Dir. Dep't Corr.*, No. CL08-166, slip op. at 7-9 (Va. Cir. Ct. Sept. 4, 2008) (internal paragraph numbers omitted) (Circuit Court Habeas R. at 118-19). While the foregoing analysis is persuasive with respect to Valdez's general complaints about the presentation of a psychological defense, it does not address Valdez's specific complaint about the presentation of a defense of settled insanity. Nevertheless, for the reasons set forth below, Valdez fails to demonstrate he was denied the effective assistance of counsel with respect to the presentation of a settled insanity defense.

In her affidavit submitted to the Circuit Court on state habeas, trial counsel swore that she did her "own research on the petitioner's [mental] evaluation and found that there was no basis to believe that there was any defense of 'settled insanity.'" (Circuit Court Habeas R. at 80.) Such an assessment appears eminently reasonable in light of the relevant law establishing that drug abuse must be "'prolonged'" or "'chronic'" and "'leading to a more or less permanent or "fixed" state of insanity.'" *Morgan*, 646 S.E.2d at 903 (*quoting State v. Sexton*, 904 A.2d 1092, 1102 (Vt. 2006)). It also appears to be a reasonable assessment given Valdez's evident capacity to understand right from wrong and appreciate the consequences of his abuse of the boy. Virginia courts have "'repeatedly held that voluntary intoxication is not a defense unless it produces a

permanent insanity in the defendant.'" *Id.* (*quoting Downing v. Commonwealth*, 496 S.E.2d 164, 166 (Va. Ct. App. 1998)).

> Thus, it is well settled that, in order to present a "settled insanity" defense in Virginia, an accused must make a *prima facie* showing that at the time of the offense he (1) suffered from a mental defect or disease of the mind, (2) that is traceable to long-term, chronic, and habitual alcohol or drug abuse, which (3) resulted in a permanent insanity as defined by Virginia law.

*Id.* at 903-04 (*citing White v. Commonwealth*, 636 S.E.2d 353, 357 (Va. 2006)).

Under the third element, the defendant must demonstrate his mental disease or defect meets the requirements of either the *M'Naghten* test or the irresistible impulse defense. *Id.* at 903 (citing cases). Under the *M'Naghten* test, "it must be clearly proven that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." *Id.* at 902 (*quoting Price v. Commonwealth*, 323 S.E.2d 106, 109 (Va. 1984)). "The irresistible impulse defense is available where the accused's mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." *Id.* (internal quotations omitted).

Although Valdez might have been able to introduce evidence that he had abused marijuana and alcohol for a prolonged period of time (Circuit Court R. at 74 (Presentence Report 8)), he points to no evidence that his drug or alcohol abuse "resulted in a permanent insanity as defined by Virginia law." *Id.* at 903-04 (*citing White*, 636 S.E.2d at 357). Indeed, Dr. Childress, who conducted the psychological evaluation of Valdez, concluded:

> It is our opinion . . . that Mr. Valdez did not have a mental disease or defect which impaired his ability to appreciate the nature and consequences of his actions,

9

rendered him unable to distinguish right from wrong, or made him unable to resist the impulse to commit the acts charged.

(Petr.'s Resp. Mot. Dismiss 45.) Moreover, Valdez's elocution at sentencing reflects that he understands right from wrong.[8] Thus, counsel was not deficient, nor was Valdez prejudiced by any failure to pursue a settled insanity defense or a traditional insanity defense. Accordingly, Claim 1(a) will be DISMISSED.

## B.     Failure to Suppress or Exclude the Child Pornography Recovered from Valdez's Computer

After Valdez's arrest, the police obtained a search warrant to search Valdez's computer that he had left at his mother's home. The police recovered three categories of pornographic images from that computer: (1) digital photos that Valdez had taken of himself masturbating that were shown to the young boy; (2) a photo of the young boy with his pants down; and, (3) roughly 250 images of child pornography that Valdez had downloaded from the internet. (Nov. 10, 2005 Tr. 29.)

### 1.     Failure to Pursue a Motion to Suppress

In Claim 1(b)(i), Valdez complains that counsel should have moved to suppress all of the pornographic images on the grounds that the search warrant, which was issued to seize his laptop computer and sought "'[a]ny information in any way related to children.'" (§ 2254 Pet. 9 (alteration in original)), was somehow improper. To the extent Valdez suggests that the warrant directed to the search of his computer lacked sufficient particularity to withstand the requirements of the Fourth Amendment, he fails to explains why this is so in light of the facts

_____

[8] "I feel utter remorse for the pain I have caused. I cannot understand how I gave into such serious sins. I did not want it to happen. My actions were wrong." (Sent'g Tr. 61.)

surrounding his crime: Valdez had been accused of abusing a young boy; the young boy told the

police that Valdez had shown him pornographic pictures on the computer; and according to the

young boy, Valdez showed the young boy pictures of Valdez with a young girl and Valdez said,

"I'm going to jail for this." (Nov. 17, 2005 Tr. 33.) Although the language in the search warrant

authorizing the seizure of any material "in any way related to children" is broad, the warrant is

otherwise specific enough: it seeks "pornographic and or nude images on any media" and

mentions in the statement of probable cause that there are naked images of Valdez on the

computer. (Search Warrant filed in Circuit Court of Stafford County, Virginia, Feb. 18, 2005.)

Given the circumstances of Valdez's crime, probable cause existed to believe that evidence of

Valdez's crimes would be found upon that computer. *See United States v. Grimmett*, 439 F.3d

1263, 1270-71 (10th Cir. 2006); *United States v. Sassani*, No. 97-4011, 1998 WL 89875, at *5

(4th Cir. Mar. 4, 1998).

     Valdez persists that even if the initial warrant was not improper, under the authority of

*Rosa v. Commonwealth*, 628 S.E.2d 92 (Va. Ct. App. 2006), once the police discovered the

images of child pornography on the computer, they were obliged to apply for a second warrant

before seizing the images of child pornography from the computer. (§ 2254 Pet. 10.) Valdez is

mistaken.[9] Valdez fails to explain why the seizure of child pornography fell outside of the scope

of the search warrant here, which authorized the seizure of pornographic or nude images and any

---

[9] In *Rosa,* the police obtained a search warrant to search defendant's computer for information related to the defendant's distribution of controlled substances and providing alcohol to someone less than twenty-one. *Rosa,* 628 S.E.2d at 93. In the process of conducting that search, a police officer came across what appeared to be child pornography. *Id.* at 93. The police officer then stopped his search and obtained a second warrant allowing him to search the computer for child pornography, which he later found. *Id.* at 93-94.

images related to children in this case alleging indecent liberties with a child under fourteen that alleged showing the minor pictures from that computer depicting Valdez masturbating. *See United States v. Williams*, 592 F.3d 511, 520-21 (4th Cir. 2010) (rejecting defendant's argument that seizure of child pornography was outside the scope of warrant which authorized seizure of any computer files related to threats to commit bodily harm to persons on school property when threats also expressed desire to have sexual relations with children).

Ultimately, Valdez must demonstrate that counsel's failure to pursue a motion to suppress on the grounds Valdez urges here falls outside "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and that he was prejudiced. He has not done so. Valdez has failed to demonstrate that counsel was constitutionally deficient, or that the Circuit Court would have granted a motion to suppress the images of child pornography seized from his computer. *See id.* at 521-24 (concluding that images portraying child pornography were justified by the plain-view exception to the warrant requirement). Accordingly, Claim 1(b)(i) will be DISMISSED.

### 2.     Alleged Inadequacy of Counsel's Litigation of the Motion in Limine

In a motion in limine filed prior to trial, counsel for Valdez argued that the 250 or so pictures of child pornography found on Valdez's computer were inadmissible in the Commonwealth's case in chief, unless Valdez put the issue of intent at issue. (Circuit Court R. at 41.) Defense counsel argued that the defense did not intend to place intent at issue with respect to the charges of aggravated sexual battery and taking indecent liberties with a child. (Nov. 10, 2005 Tr. 39-40.) Nevertheless, the Circuit Court denied the motion. (Nov. 10, 2005 Tr. 40-41.) In Claim 1(b)(i), Valdez faults counsel for not supporting her argument with citation

to binding authority from the Virginia Court of Appeals, which held under circumstances nearly identical to his, that the pornographic pictures were inadmissible. *See Blaylock v. Commonwealth*, 496 S.E.2d 97, 103-04 (Va. Ct. App. 1998).[10] It is unnecessary to resolve the issue of deficiency because Valdez has failed to demonstrate that, but for this alleged error by counsel, he would have pled not guilty and insisted upon going to trial.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A petitioner's assertion that he would have pled not guilty but for counsel's alleged error is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995) (Ellis, J.). Rather, "[t]his is an objective inquiry, *see Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 2975 (2008) (*quoting Hill*, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of

---

[10] In *Blaylock*, the defendant was convicted of aggravated sexual battery of a child less than thirteen years old. *Blaylock*, 496 S.E.2d at 99-100. Prior to trial, the trial court ruled that several images of child pornography taken from the defendant's computer were admissible to prove intent. *Id.* at 100. The defendant denied the incident had occurred and presented an alibi defense. The Virginia Court of Appeals reversed the defendant's conviction, concluding, *inter alia*, that the pornographic photos taken from the defendant's computer were improperly admitted. *Id.* at 102 ("The question before us is whether 'other crimes' evidence is admissible on the issue of intent when intent is not genuinely in dispute. We hold that it is not admissible."). *But see Croxton v. Commonwealth*, No. 0382-04-2, 2005 WL 950645, at *3 n.3 (Va. Ct. App. Apr. 26, 2005) (concluding that evidence regarding defendant's possession of pornographic movies was properly admitted to corroborate child-victim's account of watching pornographic movies with defendant).

13

conviction and any potential sentencing benefit to pleading guilty. *Id.* at 369-70. In conducting

this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea

proceedings, "as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63,

73-74 (1977).

Even in the absence of the above 250 photos of child pornography, the evidence of

Valdez's guilt was compelling. In addition to boy's testimony, the police had the digital pictures

of Valdez masturbating, which corroborated the boy's account. Additionally, the police

possessed a photo that Valdez had taken of the thirteen-year-old boy with his pants down.

Valdez has not identified any viable defense to the charges. Thus, it appears that Valdez faced a

near certainty of conviction upon going to trial. If convicted on the original charges, Valdez

faced a sentence of between one and ten years on the charge of indecent liberties with a child,

and a sentence of between one and twenty years for the charge of aggravated sexual battery. *See*

Va. Code §§ 18.2-10, 18.2-67.3(B), 18.2-370(A) (West 2004).[11] By pleading guilty to the

amended indictment, Valdez reduced his sentencing exposure by almost a third. Furthermore,

---

[11] That statute for aggravated sexually battery provided, in pertinent part:

A. An accused shall be guilty of aggravated sexual battery if he or she sexually
abuses the complaining witness, and:

. . . .

3. The act is accomplished against the will of the complaining witness by force,
threat or intimidation or through the use of the complaining witness's physical
helplessness, and
a. The complaining witness is at least 13 but less than 15 years of age . . . .

Va. Code § 18.2-67.3(A)(3)(a) (West 2004).

Valdez obtained the benefit of sentencing by a judge, rather than a jury.[12] Under Virginia's advisory sentencing guidelines, the recommended guideline sentence for a judge to impose in these circumstances was between seven and thirty-nine months. (Circuit Court R. at 69.) Given the likelihood of his conviction had he proceeded to trial and the potential sentencing benefit from pleading guilty, Valdez fails to demonstrate a reasonable probability that he would have insisted upon going to trial had counsel succeeded on her motion in limine. *See Meyer*, 506 F.3d at 369-70. Because Valdez has not demonstrated prejudice, Claim 1(b)(i) will be DISMISSED.

### C. Valdez Fails to Demonstrate that the Circuit Court Violated His Sixth Amendment Right to Counsel When It Failed to Appoint New Counsel

In Claim 2, Valdez contends that the Circuit Court violated his rights under the Sixth Amendment when it failed to appoint new counsel for him after he expressed his dissatisfaction with counsel's performance. Courts consider three factors in determining whether the trial court violated a defendant's Sixth Amendment rights in denying a motion to appoint new counsel:[13] "'(1) timeliness of the motion; (2) adequacy of the court's inquiry; and (3) whether the attorney/client conflict was so great that it resulted in a total lack of communication preventing

---

[12] During his plea proceedings, Valdez acknowledged that one of the potential benefits of his plea was that "From what I understand, Your Honor, the jury is not going to sentence me. It's going to go to you for sentencing." (Nov. 17, 2005 Tr. 16.)

[13] "The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel." *Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir. 2007), *cert. denied,* 552 U.S. 1261 (2008). Although earlier cases analyzed the failure to appoint new counsel as a denial of the right to choose one's counsel, *see United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994), the courts now recognize, that an indigent defendant, such as Valdez, has no right to his choice of counsel under the Sixth Amendment. *United States v. Basham*, 561 F.3d 302, 324-25 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 3353 (2010); *Daniels*, 501 F.3d at 739 ("[A]n indigent defendant forced to rely on court-appointed counsel, has no choice-of-counsel right."); *accord United States v. Washington*, 457 F. Supp. 2d 684, 686 (E.D. Va. 2006) (Ellis, J.).

an adequate defense.'" *United States v. Johnson*, 114 F.3d 435, 442 (4th Cir. 1997) (*quoting Mullen*, 32 F.3d at 895); *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (applying nearly identical factors in the context of § 2254 challenge to the denial of a motion for the appointment of new counsel) (*citing United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)). Furthermore, mere "[d]isagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Stenson*, 504 F.3d at 886 (*citing Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000)).

Valdez's case was set to be tried on November 17, 2004. On October 20, 2004, Valdez's counsel moved to withdraw. (Circuit Court R. at 24.) On October 28, 2004, the Circuit Court conducted a hearing on defense counsel's motion to withdraw as counsel and the defense's request for a second psychological evaluation. After hearing argument on the motion for a second psychological evaluation, the Circuit Court denied the motion. The Circuit Court then addressed defense counsel's motion to withdraw as counsel. Defense counsel explained to the Circuit Court that Valdez had lost confidence in counsel because Valdez believed counsel had made a misrepresentation to him with regard to waiving his right to speedy trial. (Oct. 28, 2005 Tr. 32.) Specifically, Valdez testified, "I was told that in order to get a second [psychological] evaluation that I needed to waive speedy trial and - - but, later on, it came back that Ms. Coleman told me that I had to pay for the second evaluation myself, and that's when I lost my trust in her." (Oct. 28, 2005 Tr. 32-33.) Valdez explained that he felt "misled" because counsel "didn't bring up the possibility of me having to pay for an evaluation at the time of waiving speedy trial." (Oct. 28, 2005 Tr. 33-34.) The Circuit Court observed that counsel's conclusions that Valdez might have pay for a second evaluation and waive his speedy trial rights was an accurate

16

statement of the facts if Valdez wished to pursue a second evaluation and "is certainly not a misrepresentation." (Oct. 28, 2005 Tr. 33.) The Circuit Court denied the motion to allow counsel to withdraw.

Four days later, on November 1, 2005, Valdez filed a *pro se* motion to have counsel removed. (Circuit Court R. at 31-34.) Valdez once again recounted that he felt that he had been misled about his speedy trial right. (Circuit Court R. at 31.) Valdez also noted that he had filed a bar complaint against counsel. (Circuit Court R. at 31.) The Circuit Court conducted a hearing on the motion on November 10, 2005. Valdez acknowledged that the only additional allegation in his present request for the dismissal of counsel was that he had filed a bar complaint against counsel. (Nov. 10, 2005 Tr. 5.) After ensuring that it had already addressed the substance of Valdez's complaints against counsel, the Circuit Court denied the motion. (Nov. 10, 2005 Tr. 7.)

Valdez fails to demonstrate that the Circuit Court violated his rights in denying his requests for new counsel. The first factor somewhat favors Valdez, in that the first motion for new counsel was not filed on the very eve of trial.[14] *See Mullen*, 32 F.3d at 896 (concluding that first factor favored defendant, where the defendant moved for new counsel thirty-three days prior to trial). As to the second factor, the Circuit Court provided Valdez with two hearings to voice his dissatisfaction with counsel. The Circuit Court then took the time to explain to Valdez why his dissatisfaction was unwarranted and why his perception that counsel had misled him was inaccurate. *See Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991) (explaining that "[t]he

---

[14] Nevertheless, this factor is somewhat tempered given that one of Valdez's primary complaints was that he felt he was misled into waiving his speedy trial rights by counsel. Any substitution of counsel would likely further delay the trial. The Clerk of the Circuit Court and the parties indicated that if November 17, 2005 trial date were rescheduled, it would be February of 2006, before a date was available. (October 28, 2005 Tr. 36.)

trial court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern" (*citing Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982))).

As to third factor, Valdez fails to demonstrate anything approaching a breakdown in communication that was in danger of impairing his defense. *Johnson*, 114 F.3d at 442 (*quoting Mullen,* 32 F.3d at 895). The record reflects that, although Valdez felt counsel had misled him, counsel and Valdez were still in regular communication and jointly pursuing a defense.[15] *See Mullen*, 32 F.3d at 896-97 (finding that substitution of counsel was warranted where attorney and client had not spoken in the month before trial). Although Valdez had filed a bar complaint against counsel and attempted to prohibit counsel from continuing to litigate on his behalf (Circuit Court R. at 32-34), counsel nevertheless continued to pursue motions zealously on Valdez's behalf. *Johnson,* 114 F.3d at 443 ("A total lack of communication is not required. Rather an examination of whether the extent of the breakdown prevents the ability to conduct an adequate defense is the necessary inquiry."). Indeed, at both hearings on the motion to remove counsel, counsel continued to argue additional motions on behalf of the defense. In particular, counsel pursued Valdez's request for a second psychological evaluation and sought to exclude from evidence the roughly 250 photos of child pornography found on Valdez's computer. Valdez had repeatedly endorsed both these matters as central to his defense of the charges. Given these circumstances, Valdez has failed to demonstrate that the Circuit Court violated his

---

[15] Valdez has submitted a letter from counsel to him dated October 19, 2005 and a copy of his psychological evaluation. (Petr.'s Br. Opp'n Respt.'s Mot. Dismiss Exs. 4-5; Circuit Court Habeas R. at 36-45.) The letter reflects trial counsel's admirable efforts to communicate to Valdez what she perceived to be the difficulties of his desired defense of insanity and his case in general. The psychological evaluation supports counsel's perception that Valdez did not have a viable insanity defense.

18

Sixth Amendment rights in denying his request for new counsel. Accordingly, Claim 2 will be DISMISSED.

### D. Valdez's Nolo Contendere Pleas Were Not Rendered Involuntary by the Alleged Denial of His Sixth Amendment Right to Counsel

In Claim 3, Valdez recasts Claims 1(a), 1(b)(ii), and 2 to assert that they rendered his plea of nolo contendere involuntary. Specifically, Valdez complains that:

> The trial court improperly amended an indictment to induce two nolo contendere pleas from Valdez, [16] Valdez was coerced into waiving speedy trial, he was intimidated by angry outbursts by Ms. Coleman, he was deprived of the fair opportunity to present his "settled insanity" defense [Claim 1(a)], he was discouraged by trial court's pattern of refusal to assure him the effective assistance of counsel [Claim 2], he was made to believe that he was going to be convicted by prejudicial inadmissible evidence, yet allowed into the Commonwealth's case-in-chief [Claim 1(b)(ii)].

(§ 2254 Pet. 26-27.) When, as here, a defendant contends that ineffective assistance of counsel influenced the voluntariness of his plea, the Court proceeds to analyze the discrete claims under the appropriate Sixth Amendment analysis. *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 491 (E.D. Va. 2005) (Ellis, J.) If the defendant cannot establish the underlying Sixth Amendment violation, his challenge to the voluntariness of his guilty plea predicated upon the alleged denial of effective assistance also fails. *See id.* at 491-95. As explained *supra*, each of Valdez's predicate Sixth Amendment claims lacks merit, therefore he fails to demonstrate that his rights were violated or that his guilty plea was involuntary. Accordingly, Claim 3 will be DISMISSED.

---

[16] As explained above, that amendment potentially worked to Valdez's advantage with respect to sentencing. Valdez fails to specify how the Circuit Court's action in permitting an amendment of the indictment, of which he was fully aware, was improper. Accordingly, this aspect of Claim 3 lacks merit and will not be considered further.

### E.   Double Jeopardy Challenges

In Claim 4, Valdez contends that his two convictions for taking indecent liberties with a child violated the Double Jeopardy Clause. In Claim 5, Valdez contends that appellate counsel was deficient for failing to pursue such a challenge. "In the context of a single criminal prosecution, the clause 'protects against multiple punishments for the same offense.'" *United States v. Ayala*, 601 F.3d 256, 264 (4th Cir. 2010) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). In the multiple punishments context, the issue of legislative intent is of critical import because the interest that the Double Jeopardy Clause seeks to protect is "limited to ensuring that the total punishment [meted out by the sentencing court] did not exceed that authorized by the legislature." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (*quoting United States v. Halper*, 490 U.S. 435, 450 (1989)). Thus, "[w]here the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985).

In making this determination of legislative intent, the courts apply the well-established test set forth in the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299 (1932). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. "When applying this test in multiple punishment cases, [the] 'exclusive focus' is 'upon the elements of the statutory provisions in question,' not the particular facts of the underlying case." *Ayala*, 601 F.3d at 265 (*quoting United States v. Allen*, 13 F.3d 105, 109 n.4 (4th Cir. 1993)). "If each

provision requires proof of a distinct element, then multiple punishments are presumed to be authorized absent a clear showing of contrary [legislative] intent." *Id.* (internal quotation marks omitted).

Here, the relevant statute provided that:

Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally commit any of the following acts with any child under the age of fourteen years shall be guilty of a Class 5 felony:
(1) *Expose his or her sexual or genital parts to any child to whom such person is not legally married or propose that any such child expose his or her sexual or genital parts to such person*; or
(2) Repealed.
(3) *Propose that any such child feel or fondle the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child*; or
(4) Propose to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or
(5) Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any of the purposes set forth in the preceding subdivisions of this section.

Va. Code §18.2-370 (West 2004) (emphasis added). Valdez was found guilty of exposing himself to the young boy under subsection 1 and attempting to have the young boy fondle Valdez's penis under subsection 3. (Nov. 17, 2005 Tr. 5.) Each violation required an element not required by the other provision, thus it is presumed the Virginia legislature intended to authorize multiple punishments for each separate act of fondling a child or exposing oneself to a child. *See Ayala*, 601 F.3d at 265. Such an interpretation is consistent with Virginia's general interpretation of the appropriate unit of prosecution for other sex crime statutes, where each discrete inappropriate sexual act constitutes a separate punishable offense. *See De'Armond v. Commonwealth*, 654 S.E.2d 317, 320-21 (Va. Ct. App. 2007). Valdez fails to demonstrate that his separate punishments for the discrete acts of forcing the boy to fondle him and for exposing

21

himself to the boy violated the Double Jeopardy Clause. Accordingly, Claims 4 and 5 will be DISMISSED.

### III. Conclusion

For the foregoing reasons, Respondent's motion to dismiss will be GRANTED. (Docket No. 4.) The § 2254 Petition (Docket No. 1) will be DENIED. The action will be DISMISSED WITH PREJUDICE.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Valdez is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

An appropriate Order shall issue.

/s/ M+R

M. Hannah Lauck
United States Magistrate Judge

Date: 9/8/10
Richmond, Virginia

22